## STATE OF CONNECTICUT *v.* TEOFILO RODRIGUEZ
### (10094)

O'CONNELL, LANDAU and FREEDMAN, Js.

Argued January 22—decision released April 7, 1992

*Carolyn K. Longstreth,* assistant state's attorney, with whom were *Devin T. Stillson,* assistant state's attorney, and, on the brief, *Walter D. Flanagan,* state's attorney, for the appellant (state).

*Peter N. Buzaid,* for the appellee (defendant).

LANDAU, J. The state of Connecticut appeals, with the permission of the trial court, from the court's judgment granting the defendant's motion to suppress evi-

dence and its judgment dismissing the charge of illegal possession of a narcotic substance with intent to sell in violation of General Statutes § 21a-278 (b). The state claims that the trial court incorrectly ruled that the affidavit in support of a search warrant authorizing searches of the defendant's house, his business and his person failed to establish probable cause. The state also argues that, viewed together, the four tips supplied by three confidential informants established a "fair probability" that evidence of drug trafficking would be found in the defendant's house and business and on his person.

The defendant claims that the affidavit failed to establish probable cause in the following ways: (1) it contained no factual basis as to the manner in which the three confidential informants acquired their knowledge of the narcotic trafficking and the defendant's involvement with this activity; (2) it did not establish the veracity of the confidential informants; and (3) it failed to meet the standard for probable cause as set forth in *Aguilar* v. *Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), and *Spinelli* v. *United States,* 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969). We agree with the state and reverse the judgment of the trial court.

The record discloses the following pertinent facts. On June 19, 1990, Detectives James Fisher and Daniel Trompetta of the Danbury police department obtained three search warrants authorizing searches of the defendant's residence at 50 Westville Avenue, Danbury, as well as his business, Nova Importing, and his person. The same affidavit was used to support each of the three warrant applications. The affidavit consisted of six substantive paragraphs that outlined information related to the Danbury police by three confidential informants over a period of three months.

Paragraph one addressed the background of the two affiants, Fisher and Trompetta, stating that they were both regular members of the Danbury police department with combined experience of more than fifteen years. It further stated that both detectives are members of the special investigations division, the primary function of which is to investigate drug activity in the Danbury area, and that both detectives have participated in numerous drug investigations that have led to arrests and convictions.

The second paragraph stated that in the first week of April, 1990, the detectives met with a confidential informant, A, whom they had known "a short period of time" but who had previously provided information proven to be true and accurate upon independent investigation. A informed them that a Dominican male named Teofilo Rodriguez and his wife, Lauretta, were selling cocaine in Danbury from two locations: a store called Nova Importing, at 130 West Street, which the informant stated was owned and operated by the defendant and his wife; and the defendant's residence at 50 Westville Avenue in Danbury. A also stated that a person named Gilberto Genao worked for the defendant, that some sales were made at Nova Importing, and that the drug deliveries from New York were made to the residence. A also indicated that the drugs were stored at the residence. The affidavit did not indicate the basis of A's knowledge of the defendant's narcotics activity.

The third paragraph of the affidavit indicated that during the third week of April, 1990, a similar tip was received from a second confidential informant, B, whom the detectives had known for over two years and who had previously provided information proven to be accurate and which had led to two seizures of narcotics and three felony arrests. B stated that the defendant was selling large quantities of cocaine in the Danbury

area and that his wife played an active part in this operation and was totally familiar with most aspects of the drug selling operation. B further stated that the cocaine is delivered to the defendant's residence and then is moved, as needed for sales, to Nova Importing where the sales are conducted. B also indicated that two other Dominican males, Gilberto Genao and the defendant's nephew Carlos Espinal, worked for the defendant by picking up the cocaine in New York City and bringing it to Danbury and making sales and contacts with buyers for the defendant. The affidavit also did not disclose the basis of knowledge for B's tip.

The fourth paragraph of the affidavit indicated that during the third week of May, 1990, the detectives met with a third confidential informant, C, who had been known to them for over ten months and who had provided information that had led to three seizures of narcotics and one felony arrest. C stated that Genao was working with the defendant selling cocaine. He further stated that he had personal knowledge of cocaine sales from Nova Importing, had personally observed cocaine in the store and had overheard numerous conversations concerning drug dealings at the store, although no basis of knowledge was indicated in the affidavit.

Paragraph five indicated that during the third week of May, 1990, C made a controlled buy of a package of cocaine at Nova Importing under the supervision of members of the Danbury police department. The affidavit indicated that prior to entering the store the police thoroughly searched C for money and drugs and found none. C was then given a predetermined sum of money and was observed entering the store and being directed to an office near the rear of the store. He remained in the store for between two and three minutes and was then observed leaving the store and traveling to a prearranged location to meet with Trompetta. C gave the detective a packet containing a white

powder substance that field-tested positive for cocaine, and told the detective that he had purchased the cocaine from Genao.

Paragraph six indicates that early in the third week of June, 1990, C informed the detectives that he had personally observed cocaine that was to be sold in the defendant's residence and that it was under the defendant's control. No time or date was indicated.

On June 19, 1990, search warrants were issued authorizing the police to conduct searches of the defendant's house, his business and his person. Evidence of narcotics trafficking, including plastic and paper packets containing white powder, drug sale records and drug paraphernalia, was seized from the defendant's house and the defendant was placed under arrest. The defendant moved to suppress the evidence and, after a hearing, the trial court found that the affidavit supporting the warrants failed to establish probable cause as defined by state and federal law. Specifically, the trial court found that probable cause was lacking because the affidavit did not include the informants' basis of knowledge; C did not provide dates of the sales or conversations he overheard; the detectives did not keep C under constant surveillance during the controlled buy; and B did not state when he observed cocaine at the defendant's residence. Additionally, the trial court found that the affidavit did not sufficiently incriminate the defendant, as opposed to Genao, and the detectives did not corroborate that Nova Importing and 50 Westville Avenue were the defendant's business and his home address respectively. We disagree with the trial court and conclude that under the totality of the circumstances test enunciated in *Illinois* v. *Gates,* 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983); and subsequently adopted by our state in *State*

v. *Barton,* 219 Conn. 529, 594 A.2d 917 (1991); there was sufficient probable cause to issue the search warrants.[1]

The fourth amendment "protects people from unreasonable government intrusions into their legitimate expectation of privacy."[2] *United States* v. *Chadwick,* 433 U.S. 1, 7, 97 S. Ct. 2476, 53 L. Ed. 2d 538 (1977). The latter part of the fourth amendment, customarily referred to as the warrant clause, makes it apparent that a valid arrest warrant or search warrant may issue only upon a showing to the magistrate that there is probable cause for the arrest or for the search. *Henry* v. *United States,* 361 U.S. 98, 80 S. Ct. 168, 4 L. Ed. 2d 124 (1959) (arrest); *United States* v. *Harris,* 403 U.S. 573, 91 S. Ct. 2075, 29 L. Ed. 2d 723 (1971) (search).

A warrant may be issued to search any property "at which there is probable cause to believe that fruits, instrumentalities, or evidence of a crime will be found." *Zurcher* v. *Stamford Daily,* 436 U.S. 547, 554, 98 S. Ct. 1970, 56 L. Ed. 2d 525 (1978). Two conditions necessary for a search warrant to issue are (1) that there is

---

[1] Our decision in this case is controlled by our Supreme Court's recent rulings in *State* v. *Barton,* 219 Conn. 529, 594 A.2d 917 (1991), and *State* v. *Johnson,* 219 Conn. 557, 594 A.2d 933 (1991). See *State* v. *Payne,* 25 Conn. App. 428, 431, 594 A.2d 1035, cert. denied, 220 Conn. 915, 597 A.2d 337 (1991). "In those cases, the court overruled its previous holding in [*State* v.] *Kimbro* [197 Conn. 219, 492 A.2d 498 (1985)] and found that 'the "totality of the circumstances" analysis adopted in [*Illinois* v.] *Gates,* [462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)] will continue to guarantee the people of Connecticut "the full panoply of rights" that they have come to expect as their due.' *State* v. *Barton,* supra, 546." *State* v. *Payne,* supra.

[2] The fourth amendment to the United States constitution, made applicable to the states through *Wolf* v. *Colorado,* 338 U.S. 25, 28, 69 S. Ct. 1359, 93 L. Ed. 2d 1782 (1949), provides: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

probable cause to believe a crime has been committed and that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction, and (2) that there is probable cause to believe that the items sought to be seized will be found in the place to be searched.[3] *United States* v. *Harris,* supra, 584; *State* v. *Weinberg,* 215 Conn. 231, 238, 575 A.2d 1003, cert. denied, U.S.    , 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990); *State* v. *Morrill,* 205 Conn. 560, 565, 534 A.2d 1165 (1987); *State* v. *DeChamplain,* 179 Conn. 522, 528–29, 427 A.2d 1338 (1980); *State* v. *Dixon,* 25 Conn. App. 3, 11, 592 A.2d 406 (1991).

The conclusion concerns the connection between the items sought and the crime committed and the present location of the items sought. *State* v. *Heinz,* 193 Conn. 612, 616–17, 480 A.2d 452 (1984). The nexus between the items sought and the place to be searched may be inferred from the type of crime, the nature of the evidence, the extent of an opportunity for concealment and normal inferences as to where a criminal would likely hide the item. *State* v. *Couture,* 194 Conn. 530, 537, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985); *State* v. *Vallas,* 16 Conn. App. 245, 261–62, 547 A.2d 903 (1988), aff'd, 212 Conn. 485, 563 A.2d 660 (1989). The quantum of certainty required is a "fair probability" that the search

---

[3] In contrast, "[t]he validity of an arrest warrant depends upon whether the application for the warrant and the accompanying affidavit establish probable cause to believe that: (1) a crime has been committed; and (2) the person to be arrested committed that crime. General Statutes § 54-2a (a) (1); Practice Book § 593; *State* v. *Daley,* 189 Conn. 717, 720, 458 A.2d 1147 (1983); *State* v. *DeChamplain,* 179 Conn. 522, 529, 427 A.2d 1338 (1980); 1 LaFave, Search and Seizure (1978) § 3.7. The affidavit must recite sufficient facts so that the judicial officer who issues the warrant can, relying solely on the information thus brought to his or her attention, make an independent determination that probable cause exists as to each element of every crime charged." *State* v. *Heinz,* 193 Conn. 612, 616–17, 480 A.2d 452 (1984).

will yield the article specified. *State* v. *Barton,* supra, 552; *State* v. *Ralston,* 7 Conn. App. 660, 682, 510 A.2d 1346 (1986).

Under *Illinois* v. *Gates,* supra, probable cause for a search warrant is established if the "totality of the circumstances" indicate a probability of criminal activity. Id., 230–32. Probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules. Id. Rather than resembling a "piece of precast concrete" probable cause "is a 'mosaic' . . . which is established by fitting pieces of information together . . . ." (Citation omitted.) *State* v. *Ralston,* supra.

Federal and state courts have long required that when an affidavit reports information received from a confidential informant the magistrate must make an independent evaluation of the informant's credibility. *State* v. *Barton,* supra, 542. As an aid to the magistrate in making this determination, the United States Supreme Court has travelled a meandering road, first stopping at the two-pronged *Aguilar-Spinelli* test[4] and erecting a " 'complex superstructure of evidentiary and analytical rules' " leading to excessively rigid appellate review; *State* v. *Barton,* supra, 534, quoting *Illinois* v. *Gates,* supra; and finally, in *Illinois* v. *Gates,* supra, abandoning the two-pronged test in favor of the "totality of the circumstances" test. In *Illinois* v. *Gates,* the

---

[4] Under this test, "[t]he issuing judge must be informed of (1) some of the underlying circumstances relied on by the person providing the information to the affiant; and (2) some of the underlying circumstances from which the affiant concluded (a) that the informant, whose identity need not even be disclosed, was credible, or (b) that his information was reliable." (Internal quotation marks omitted.) *State* v. *Ruscoe,* 212 Conn. 223, 228–29, 563 A.2d 267 (1989), cert. denied, 493 U.S. 1084, 110 S. Ct. 1144, 107 L. Ed. 2d 1049 (1990); *State* v. *Delmonaco,* 194 Conn. 331, 338, 481 A.2d 40, cert. denied, 469 U.S. 1036, 105 S. Ct. 511, 83 L. Ed. 2d 401 (1984).

Supreme Court ruled that a deficiency in the showing on either basis of knowledge or reliability may be overcome by a strong showing in the other area or by other indicia of trustworthiness, such as independent corroboration, a high degree of detail stated, or the results of independent police investigation. Id. The court continued to emphasize that basis of knowledge and reliability are not entirely separate considerations, but rather closely intertwined concepts that often overlap. Id.

Our state Supreme Court has taken a similarly circuitous route. After first accepting the *Illinois* v. *Gates* "totality of the circumstances" test; see *State* v. *Perry,* 195 Conn. 505, 508, 488 A.2d 1256 (1985); *State* v. *Gasparro,* 194 Conn. 96, 106, 480 A.2d 509 (1984); it later ruled that article first, § 7, of our state constitution required adherence to the *Aguilar-Spinelli* test. *State* v. *Kimbro,* 197 Conn. 219, 496 A.2d 498 (1985). In 1991, the court repudiated *Kimbro* and embraced the *Gates* "totality of the circumstances" approach to the probable cause determination: "When a search warrant affidavit is based on information provided to the police by confidential informants, the magistrate should examine the affidavit to determine whether it adequately describes both the factual basis of the informant's knowledge and the basis on which the police have determined that the information is reliable. If the warrant affidavit fails to state in specific terms how the informant gained his knowledge or why the police believe the information to be trustworthy, however, the magistrate can also consider all the circumstances set forth in the affidavit to determine whether, despite these deficiencies, other objective indicia of reliability reasonably establish that probable cause to search exists. In making this determination, the magistrate is entitled to draw reasonable inferences from the facts presented." *State* v. *Barton,* supra, 544.

"With respect to our function in reviewing trial court decisions on probable cause, it is clear that upon disputed *factual* issues we are ordinarily bound by the finding of the judge who heard the evidence. We should not, however, defer to the legal conclusions drawn from those facts if in our judgment they are clearly erroneous. Practice Book § 3060D. We have heretofore treated probable cause as a question of law to be reviewed in the light of subordinate facts found by the trial court or presented to us as undisputed. See *State* v. *Daley,* [supra]; *State* v. *Jackson,* 162 Conn. 440, 294 A.2d 517, cert. denied, 409 U.S. 870, 93 S. Ct. 198, 34 L. Ed. 2d 121 (1972). . . . No more deference is due [a] determination than any other trial court decision on a question of law." (Emphasis in original.) *State* v. *Kimbro,* supra, 242 (*Shea, J.,* dissenting). Once a magistrate has made a determination on the issue of probable cause, in contrast, the determination is accorded great deference by reviewing courts on both the trial and appellate levels. *United States* v. *Ventresca,* 380 U.S. 102, 109, 85 S. Ct. 741, 13 L. Ed. 2d 684 (1965); *Aguilar* v. *Texas,* supra; *United States* v. *Travisano,* 724 F.2d 341, 345 (2d Cir. 1983); *State* v. *Barton,* supra, 536. In reviewing the sufficiency of the affidavit for a search warrant we do not conduct a de novo review. *Illinois* v. *Gates,* supra; *State* v. *Couture,* supra, 546. We limit ourselves to the facts that appear on the face of the affidavit or that properly may be inferred therefrom; *State* v. *Williams,* 170 Conn. 618, 629, 368 A.2d 140, cert. denied, 429 U.S. 865, 97 S. Ct. 174, 50 L. Ed. 2d 145 (1976); testing those facts with common sense and reality. *United States* v. *Ventresca,* supra. A probable cause determination by a magistrate will be upheld as long as there was " 'a "substantial basis for . . . conclud[ing]" that a search warrant would uncover evidence of wrongdoing.' " *United States* v. *Rowell,* 903 F.2d 899, 902 (2d Cir. 1990).

Having set out the applicable rules of law, we proceed with our analysis in light of these standards. The trial court scrutinized the affidavits and examined each paragraph with great care. The trial court found fault with each paragraph of the affidavit describing information the affiants had received from the confidential informants. The court concluded in paragraph two that A never indicated how he knew the information stated in that paragraph, and never stated that he actually saw the cocaine. Regarding paragraph three, the court concluded that B never indicated how he knew the information that was stated therein and that the facts were not reliable or credible. In paragraph four, the court found fault with the fact that C stated that Genao made the sales for Rodriguez, but that he did not say when the sales where made. The court concluded that paragraph five never said that C, who had made the controlled buy, was searched before he went into the store and after he exited the store, or that the detectives had him in view. The court was also concerned that in paragraph six, B did not tell the detectives the time at which he saw the quantity of cocaine at the defendant's residence. Finally, the court found fault with the fact that at the suppression hearing the affiants testified that B met with them during the third week of May, but the affidavit did not mention this. The trial court then found, under the *Aguilar-Spinelli* test, that the information was not shown to be reliable and the basis of the informant's knowledge was not appropriately revealed.[5]

Although *Gates* abandoned the two-pronged test in favor of a totality of the circumstances test, the *Gates* majority "did not reject out of hand the underlying concerns that had originally been expressed in *Aguilar*."

---

[5] The trial court applied the *Aguilar-Spinelli* test as "law that is effective today," although it concluded that even under the *Gates* "totality of the circumstances" test the motion to suppress should be granted.

*State* v. *Barton,* supra. Rather, the court agreed that an informant's " 'veracity' or 'reliability' and the 'basis of knowledge' inquiries formulated in *Aguilar* remain 'highly relevant' in the determination of probable cause and should be regarded as 'closely intertwined issues that may usefully illuminate the commonsense, practical question' of the existence of probable cause to believe that contraband or evidence is located in a particular place." Id., 537, quoting *Illinois* v. *Gates,* supra, 230. The court did abandon, however, the " 'rigid compartmentalization' of the inquiries and denied that the court had ever intended them to be understood as 'entirely separate and independent requirements to be rigidly exacted in every case.' " Id., quoting *Illinois* v. *Gates,* supra.

Here, the trial court excluded the April tips set out in paragraphs two and three of the affidavit on the ground that the affiants' failed to state the bases of the informants' knowledge. Applying the totality of the circumstances analysis, we conclude that the magistrate was entitled to credit those tips despite the failure of the affidavit to reveal the basis of the knowledge contained therein. The information received from the two different sources dovetailed and thus each source corroborated the information provided by the other and enhanced the reliability of the stated facts. *State* v. *Brown,* 14 Conn. App. 605, 616, 543 A.2d 750, cert. denied, 208 Conn. 816, 546 A.2d 283 (1988). Both of the informants were known to the two detectives and, therefore, the magistrate could infer that each had an interest in avoiding adverse consequences resulting from providing the police with false information. *State* v. *Barton,* supra, 550–51. Although the basis for their knowledge of the information related in their tips was not disclosed, the information was corroborated by C's controlled buy. Additionally, common sense leads us, inferentially, to the conclusion that the tip was trust-

worthy. Id., 551; *State* v. *Johnson,* 219 Conn. 557, 568, 594 A.2d 933 (1991). B, who provided the second tip in April, had a strong track record of providing information in the past. We conclude that, under the totality of the circumstances, the magistrate was entitled to credit the two April tips, despite the fact that the informants' basis of knowledge was not indicated.

The trial court rejected the first May tip because C failed to provide exact dates of the "numerous" drug sales from Nova Importing that he claimed to have observed. The tip was based on C's direct observation and thus the magistrate could reasonably credit the information. *State* v. *Morrill,* supra, 566. Reading the affidavit, the magistrate could reasonably have inferred that the activity C described took place on various dates in the weeks preceding the tip because C's use of both the present and past progressive verb tenses in describing the activity indicated continuing action. Moreover, this court has noted that the business of dealing in illegal drugs often "involves a course of conduct which continues over a long period of time"; *State* v. *Ralston,* supra; and "is usually considered to be a regenerating activity." *State* v. *Brown,* supra, 615. Although it is reasonable to infer that probable cause dwindles as time passes, the likelihood that evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock. *State* v. *Johnson,* supra, 566. Because the affidavit as a whole clearly depicts narcotic trafficking carried on continuously over a period of months, and narcotics trafficking typically occurs for extended periods of time, the temporal factors are not as critical to the determination of probable cause and do not require the magistrate wholly to exclude this tip from his consideration. Id.

The trial court discounted the controlled buy because of the failure of the officers to keep the informant in

view and the failure of the affidavit to state that he was searched after the buy. The affidavit states that C "was thoroughly searched and after finding no drugs or money was given a prerecorded sum of money and surveilled to travel to [Nova Importing] . . . . The informant was observed to enter 'Nova Importing' remain 2–3 minutes and exit the store and travel to a pre arranged location where the informant met with Trompetta and turned over a package of white powder substance that field tested positive to be cocaine." The affidavit also indicates that the informant told the detectives that he was directed to the rear of the store, where he purchased the cocaine from Gilberto Genao. Because C was searched before entering the store, was not seen leaving the store other than to meet with Trompetta, remained in the store only a short while and was observed until he met with the detective, it is a fair and reasonable inference that the contraband he gave to Trompetta came from the premises in question. See id. The informant was shown to be credible and statements made on his personal knowledge can be credited. *State* v. *Morrill,* supra. The trial court's imposition of the requirement that the officers keep the informant under surveillance while he was inside the building consummating the transaction is unrealistic. Such a rule would effectively eliminate controlled buys as an investigative technique in almost all situations where a sale is made inside a building. *State* v. *Johnson,* supra. The controlled buy thus was a reliable part of the foundation on which the magistrate could base his finding of probable cause.

The trial court also found fault with the fact that paragraph six of the affidavit did not state when B observed cocaine at the defendant's residence and that the detectives did not corroborate that Nova Importing and 50 Westville Avenue were the defendant's business and his home address. Because, as stated earlier,

involvement in the sale of narcotics is seldom a one time activity and the affidavit as a whole clearly indicates that narcotic trafficking was carried on continuously over a period of months, the failure to indicate precise dates does not defeat the magistrate's finding of probable cause. Fitting all of the individual pieces of information together forms a "mosaic" that establishes probable cause for the search of the defendant's residence, his place of business and his person. The information leads to the reasonable conclusion that the locations for which the search warrant was obtained were in fact the defendant's home and business.

The trial court also found that the affidavit did not sufficiently incriminate the defendant, as opposed to Genao. All three confidential informants indicated that Genao was working for the defendant, that he made customer contacts for the defendant, that he was involved in drug sales in Danbury and that he picked up the cocaine in New York and brought it to Connecticut for the defendant. Here, too, the information received from each of the three sources was confirmed by the other two informants and thus each source corroborated the information provided by the others and enhanced the reliability of the stated facts. *State* v. *Brown,* supra, 616.

Viewed together, the four tips and the controlled buy established a "fair probability" that evidence of narcotics trafficking would be found at the defendant's residence, at his business and on his person. The information as to the tips set out in paragraphs two, three, four and five of the affidavit provides background and context for the salient and significant June tip set out in paragraph six. The initial three tips describe in highly consistent terms the modus operandi of the enterprise: deliveries of cocaine were received at the defendant's home, sales and meets were conducted at his place of business, the defendant and his wife were both involved

in this activity, and Genao handled the direct transactions with customers. C's controlled buy corroborated, in highly concrete terms, his earlier report as well as the details described by A and B.

The judgment is reversed and the case is remanded with direction to deny the defendant's motions to suppress and dismiss and to reinstate the charges against him.

In this opinion the other judges concurred.