STATE OF CONNECTICUT *v.* MARK VINCENT
(10688)

DUPONT, C. J., FOTI and LAVERY, Js.

Argued September 28, 1992—decision released February 9, 1993

*Michael K. Courtney,* assistant public defender, for the appellant (defendant).

*Leah Hawley,* assistant state's attorney, with whom, on the brief, were *Walter Flanagan,* state's attorney, and *David Holzbach,* assistant state's attorney, for the appellee (state).

LAVERY, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of criminal possession of a revolver in violation of General Statutes § 53a-217.[1] The defendant claims that the trial court: (1) should have suppressed the revolver and ammunition seized during the execution of a search warrant because (a) there was no probable cause to believe that the items sought were present within the

---

[1] General Statutes (Rev. to 1989) § 53a-217 provides: "(a) A person is guilty of criminal possession of a pistol, revolver or electronic defense weapon when he possesses a pistol, revolver or electronic defense weapon and has been convicted of a capital felony, a class A felony, a class B felony, except a conviction under section 53a-86, 53a-122 or 53a-196a, a class C felony, except a conviction under section 53a-87, 53a-152, 53a-153 or

premises to be searched or that there was a nexus between such items and criminal activity, (b) the description of items authorized to be seized was overly broad and authorized a general warrant, (c) the trial court's conclusion that the seizure was valid because of the plain view exception was mistaken because the police had sufficient antecedent probable cause to obtain a search warrant for the revolver, and (d) the Connecticut constitution requires "inadvertence" for plain view seizure even if the United States constitution does not; (2) should have excluded evidence regarding the investigation into the disappearance of the defendant's daughter; (3) should have issued the preliminary voir dire oath to the first four jurors selected; and (4) should have ruled on a pretext claim by the defendant. We affirm the judgment of the trial court.

The following facts could have reasonably been found by the jury. In June, 1988, the defendant's daughter Doreen disappeared from the defendant's home in Wallingford. On July 31, 1989, officers of the Wallingford police department were issued a search and seizure warrant for the defendant's mother's home in Bethel where the defendant was residing. The warrant authorized the officers to seize medical records, personal papers, clothing, artifacts and photographs of the defendant's daughter Doreen.

During the execution of the warrant, one of the officers discovered a revolver under articles of clothing inside a paper bag between the studs of the garage. The defendant told the officers that they could not take

53a-196b, or a felony under sections 53a-60 to 53a-60c, inclusive, 53a-72a, 53a-72b, 53a-95, 53a-103, 53a-103a, 53a-114, 53a-136 or 53a-216. For the purposes of this section, 'convicted' means having a judgment of conviction entered by a court of competent jurisdiction.

"(b) Criminal possession of a pistol, revolver or electronic defense weapon is a class D felony, for which two years of the sentence imposed may not be suspended or reduced by the court."

his gun because it was not listed in the search warrant. Since the defendant had a prior felony record, it was illegal for him to have possession of a gun. The officers seized the gun as contraband. Other guns discovered during the search were not seized because the defendant's mother claimed ownership of them. As a result of the search, the police recovered photographs of the defendant's daughter and her birth certificate in addition to the gun. The defendant was subsequently arrested and charged with criminal possession of a firearm.

## I

## THE MOTION TO SUPPRESS

## A

We must determine whether the facts that appear on the affidavit presented a substantial basis for the magistrate's conclusion that probable cause existed. *State* v. *Johnson,* 219 Conn. 557, 565, 594 A.2d 933 (1991). We are confined to the facts that appear on the face of the affidavit and those facts that may properly be inferred therefrom, testing those facts with common sense and reality and with great deference to the fact that the issuing magistrate found probable cause. *State* v. *Rodriguez,* 27 Conn. App. 307, 316, 606 A.2d 22 (1992).

From the allegations set forth in the warrant affidavit, the issuing magistrate could reasonably conclude the following. On June 5, 1988, the defendant moved from Bridgeport to Whirlwind Hill Road in Wallingford with his wife Sharon, her children, and Doreen Vincent, the defendant's daughter from a previous marriage. Doreen's mother, Donna Jones, lived in Waterbury. On June 15, 1988, at approximately 11:30 p.m., Sharon Vincent returned home from church and was informed by the defendant that Doreen was missing.

The defendant said that she had left through the front door. Sharon Vincent later stated that this was impossible because the door was locked with a deadbolt that required a key. Jones then called the defendant's Wallingford home and was told that Doreen was not at home. Jones attempted to contact Doreen several times on June 17, but the defendant had removed the phone from the wall. On Saturday evening, June 18, Jones arrived at the defendant's house to pick up Doreen and was then told that she had run away. Jones asked the defendant to alert the police, but he refused. Only at Jones' insistence did the defendant agree to report Doreen missing. He explained that he did not report her missing right away because he thought she had run away to Jones' house. Doreen had run away to Jones' house three times before, but on each occasion Jones had immediately called the defendant. The defendant also told police that he did not report Doreen missing because he thought Jones had come to get her when, in fact, he knew that at the time of the disappearance Jones did not know where he lived. The defendant did not tell his mother or a longtime family friend that Doreen was missing even though he visited those people on June 19, 1988.

In 1989, when Sharon Vincent moved from the Wallingford residence to Danbury, she gave Doreen's bedroom furniture and curtains to Jones. She told Jones that the defendant had thrown away Doreen's bedspread because Doreen had "messed it up." Sharon refused to turn over to police any of Doreen's school papers, clothing or personal effects.

On July 10, 1989, search and seizure warrants were issued to seize Doreen's personal effects from Sharon's home in Danbury and her brother's home in Newtown. Property of Doreen's that the defendant said she had taken with her was recovered pursuant to these warrants.

The defendant admitted to the police that he had a volatile temper and that on June 15, 1988, he had become angry with Doreen, had hit her and had pushed her into a window, breaking it.

In November, 1988, the defendant moved into a house he shared with Roseann Pelloni. He left no forwarding address with the police, Sharon Vincent or Jones. His whereabouts were discovered after he was involved in a domestic dispute to which the Wallingford police were called.

The defendant admitted to the police that he had taken photographs of Doreen in her underwear in the weeks prior to her disappearance. Pelloni stated that the defendant often took photographs, but that she searched his personal effects and was not able to find any. The defendant claimed that he no longer had any property of Doreen's when in fact, acting pursuant to a warrant, the police seized from the defendant's truck a jersey similar to Doreen's clothing. Jones consented to a search of her house and turned over to police papers, furniture and magazines belonging to Doreen. The police were unable to recover any personal or medical records of Doreen and believed it valuable to their investigation to obtain any personal articles that might contain fingerprints, hair samples, handwriting samples and medical records that might identify her, and personal artifacts that might contain information concerning her disappearance. Sharon Vincent told police that, after Doreen's disappearance, she found several letters that Doreen had written to her friends but had not mailed. Those letters were not recovered. The defendant had been living at his mother's house in Bethel for several weeks prior to the issuance of the warrant.

The defendant claims that there is nothing in the affidavit showing that the affiants or the parties supply-

ing information had reason to believe that any of the items sought were in the house, and that the magistrate could not have reasonably concluded that there was a nexus between the objects sought and any crime because there was no crime under investigation. The defendant argues that the application does not mention a crime or offense but rather "the sudden disappearance of Doreen Vincent." We find no merit in the defendant's claims.

General Statutes § 54-33a[2] permits the issuance of a search warrant if there is probable cause to believe that the property constitutes evidence of an offense. The government has an interest in solving crimes and may seize property solely for the purpose of proving a crime. *Warden* v. *Hayden,* 387 U.S. 294, 306, 87 S. Ct. 1642, 18 L. Ed. 2d 782 (1967). For purposes of the fourth amendment "there is no viable reason to distinguish intrusions to secure 'mere evidence' from intrusions to secure fruits, instrumentalities, or contraband." Id., 310. In the case of mere evidence, "[t]here must, of course, be a nexus—automatically provided in the case of fruits, instrumentalities or contraband—between the item to be seized and criminal behavior." Id., 307; General Statutes § 54-33a; *State* v. *Gold,* 180 Conn. 619, 650–51, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980). Consideration of police purposes is required to this end. *Warden* v. *Hayden,* supra.

---

[2] General Statutes § 54-33a provides in pertinent part: "(a) As used in sections 54-33a to 54-33g, inclusive, 'property' includes, without limitation, documents, books, papers, films, recordings and any other tangible thing.

"(b) Upon complaint on oath by any state's attorney or assistant state's attorney or by any two credible persons, to any judge of the superior court, that he or they have probable cause to believe that any property . . . which constitutes evidence of an offense . . . is within or upon any place, thing or person, such judge . . . may issue a warrant commanding a proper officer to enter into or upon such place or thing, search the same or the person and take into his custody all such property named in the warrant. . . ."

We conclude, as did the trial court, that there was probable cause to believe that a crime had been committed, that the evidence sought would aid in a particular apprehension or conviction, and that the named items would be in the defendant's mother's house where the defendant was living.

The defendant was uncooperative and evasive regarding his daughter Doreen's disappearance. He delayed reporting the disappearance for three days and filed the report only after pressure from his former wife, Doreen's mother. He actually concealed her disappearance from family, friends and the girl's mother.

The defendant gave vague and contradictory information to the police. His accounts of how Doreen left the house and his subsequent efforts to locate her were contradicted by others. Items that the defendant claimed Doreen had taken with her were later recovered from the defendant's estranged wife, Sharon Vincent.

The defendant moved at least twice after Doreen's disappearance and failed to inform the police. His whereabouts were discovered after he was involved in a domestic disturbance to which the police responded. The defendant has a volatile temper and in fact had hit Doreen and had pushed her into a window on the day she disappeared. The defendant had taken photographs of Doreen in her underwear shortly before her disappearance.

More than one year had elapsed between Doreen's disappearance and the issuance of the search warrant. Doreen was twelve years old at the time of her disappearance. The police were interested in recovering items that would contain physical evidence that would help to identify her if she was located and items that might contain evidence regarding her disappearance. The information set forth in the affidavit established

that there was a fair probability that the defendant was criminally involved in his daughter's disappearance and that the evidence sought would aid in proving this.

Doreen lived with the defendant until her disappearance. The defendant was residing at his mother's house at the time the warrant was issued. The police had already searched Sharon Vincent's home, her brother's home, Jones' home and the defendant's truck, but had found no personal or medical records relating to Doreen. Unmailed letters written by Doreen to her friends were discovered by Sharon Vincent after Doreen's disappearance. These letters had not been recovered by the police. Thus, the magistrate could have inferred that the defendant was concealing personal effects and records of Doreen and that those items would be kept where he resided.

"The nexus between the items sought and the place to be searched may be inferred from the type of crime, the nature of the evidence, the extent of an opportunity for concealment and normal inferences as to where a criminal would likely hide the item. . . . The quantum of certainty required is a 'fair probability' that the search will yield the article specified." (Citations omitted.) *State* v. *Rodriguez,* supra, 313–14.

## B

The defendant next claims that the use of the word "artifacts" coupled with the words "personal papers" in the search warrant constitutes a general warrant and authorized an exploratory search. We disagree and find that the warrant described the objects to be seized with sufficient particularity to pass constitutional muster.

The description of the items sought to be seized was as specific as the circumstances and nature of the activity under investigation permitted. The police were seek-

ing items that would yield physical evidence, including hair samples, fingerprints, handwriting samples, records that might help identify Doreen and personal artifacts that would explain her disappearance. In this case it would have been impossible to describe the objects sought with any great specificity. *State* v. *Ruscoe,* 212 Conn. 223, 234, 563 A.2d 267, cert. denied, 493 U.S. 1084, 110 S. Ct. 1144, 107 L. Ed. 2d 1049 (1989), citing *United States* v. *Blum,* 753 F.2d 999, 1001 (11th Cir. 1985) (description of " '[p]orcelain ware, toys, furniture, baby products and miscellaneous merchandise fraudulently obtained from vendors throughout the United States . . .' " was sufficient). In *State* v. *Johnson,* 160 Conn. 28, 35, 273 A.2d 702 (1970), the words " 'paraphernalia which could be used to violate' " the conspiracy statute were insufficient because there may be conspiracy to do a limitless variety of illegal acts and the language was not specific enough.

The warrant did not authorize the officers to conduct a search for anything other than items belonging to Doreen Vincent. *Andresen* v. *Maryland,* 427 U.S. 463, 481–82, 96 S. Ct. 2737, 49 L. Ed. 2d 627 (1976). As to what was to be taken, nothing was left to the discretion of the officers executing the warrant. Id., 480.

## C

The defendant's next two claims, first, that the trial court's conclusion that the seizure of the gun was valid in accordance with the "plain view" exception was clearly erroneous, as the police had sufficient antecedent probable cause to obtain a search warrant for the gun, and, second, that the declaration of rights in the Connecticut constitution requires "inadvertence" in the plain view seizure context even if the United States constitution does not, can be combined because it is unnecessary to reach either of those two claims.

"Two requirements must be met to invoke the plain view doctrine: (1) the initial intrusion that enabled the police to view the items seized must have been lawful; and (2) the police must have had probable cause to believe that these items were contraband or stolen goods." *State* v. *Ruscoe,* supra, 237–38. "Inadvertence is not required if the items seized fall under the category of contraband, stolen property or objects dangerous in themselves." *State* v. *Couture,* 194 Conn. 530, 547, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 971, 83 L. Ed. 2d 967 (1985).

"Contraband" is defined in General Statutes § 54-36a, as any property the possession of which is prohibited by a provision of the General Statutes. Section 53a-217 prohibits the possession of a pistol or revolver by a convicted felon. In this case, the police were lawfully in the defendant's mother's residence pursuant to the search warrant. Since the warrant called for a search of the residence of the defendant on Marywood Road in Bethel, the police were entitled to search the entire dwelling. See *United States* v. *Sawyer,* 799 F.2d 1494, 1509 (11th Cir. 1986), cert. denied sub nom. *Leavitt* v. *United States,* 479 U.S. 1069, 107 S. Ct. 961, 93 L. Ed. 2d 1009 (1987). The police were entitled to enter an area or open a container where items sought pursuant to the warrant could be concealed. *United States* v. *Gray,* 814 F.2d 49, 51 (1st Cir. 1987). During the search, a handgun was found underneath clothing in a paper bag in the garage. The defendant, who was with the officers, said the gun was his. The police officers present had knowledge of the defendant's prior conviction. They had probable cause to associate the property with criminal activity and as contraband without further investigation. *State* v. *Reddick,* 207 Conn. 323, 335, 541 A.2d 1209 (1988). Because the revolver seized in this case constitutes contraband, the protection of our state constitution would be unavailing to

the defendant even if we were to find that article first, § 7, requires an inadvertence limitation on the plain view doctrine. The seizure of the revolver was proper. *State* v. *MacNeil,* 28 Conn. App. 508, 521, 613 A.2d 296, cert. denied, 224 Conn. 901, 615 A.2d 1044 (1992).

## II

### EVIDENCE OF DISAPPEARANCE OF THE DEFENDANT'S DAUGHTER

The defendant claims that the trial court should have excluded the testimony regarding the investigation into the disappearance of the defendant's daughter. He claims that the repeated reference to her disappearance was more prejudicial than probative because the jury was led to believe that the defendant had killed her. The defendant objected only once on the ground that the disappearance of Doreen Vincent "has nothing to do with this particular case." The trial court overruled the objection on the basis that the evidence was foundational and an exception was taken. There were no exceptions to the subsequent references. We decline to review this claim because the defendant did not raise the ground that the evidence was more prejudicial than probative and, in fact, the defendant made no other objections after the first one. When an objection is made, Practice Book § 288[3] requires that counsel state the grounds for the objection and requires counsel to take an exception to make it a ground of appeal. On appeal, we will review evidentiary rulings only on the specific ground raised in the objection. *State* v. *Sinclair,* 197 Conn. 574, 579, 500 A.2d 539 (1985). The single

---

[3] Practice Book § 288 provides: "Whenever an objection to the admission of evidence is made, counsel shall state the grounds upon which it is claimed or upon which objection is made, succinctly and in such form as he desires it to go upon the record, before any discussion or argument is had. Argument upon such objection shall not be made by either party unless the court requests it and, if made, must be brief and to the point. An exception to the ruling must be taken in order to make it a ground of appeal."

objection on the basis of relevancy was insufficient to alert the trial court to a claim that the probative evidence was outweighed by the danger of undue prejudice. In *State* v. *Sinclair,* supra, our Supreme Court refused to review the claim that certain evidence should not have been admitted because its prejudicial impact far outweighed its probative value because the objection at trial was based on relevance. Likewise, the defendant here cannot prevail on his evidentiary claim since he failed to articulate the basis for his objection at trial.

## III

The defendant next claims that the court failed to issue the preliminary voir dire oath to the first four jurors selected. The defendant did not preserve this issue in the trial court by means of objection and exception to the court's ruling. Prior to oral argument of this case, the defendant did file a motion for review of the trial court's ruling on his motion for rectification. The defendant had sought an evidentiary hearing in the trial court on the issue of the administration of the voir dire oath to the first four jurors. We granted the defendant's motion for review, but denied the relief requested because the record reflected that the oath was administered. The defendant also moved to file a supplemental brief on this issue. We denied that motion because we have previously held that the sole remedy of a party seeking review of an order denying articulation or rectification is by a motion for review. *State* v. *Holloway,* 22 Conn. App. 265, 274–76, 577 A.2d 1064, cert. denied, 215 Conn. 819, 576 A.2d 547 (1990). "To hold otherwise would mean that a defendant, having unsuccessfully sought review by this court of a trial court's ruling on a motion for articulation, could thereafter present the same issue to this court on the merits of the appeal. We would then be providing two appellate reviews of

the same issue." Id., 275. Therefore, having previously ruled on this issue in this case, we decline to review it in this opinion.

## IV

The defendant's final claim is that the claim of subterfuge or pretext was raised before the trial court and not ruled on, and that the case should be remanded to the trial court for a full development of the pretext claim. The defendant claims that the real object of the search was the defendant's gun and that two weeks prior to the search the defendant had told the police in a recorded statement that he had a gun at home, and the police had told him that he was a convicted felon and should not have a gun in his house. A review of the transcript shows that the defendant had a hearing on this subject and that the trial court ruled as follows: "The defendant has made a great attempt here, and presented it well, that there was more than appeared here, but the testimony of each of the officers was sequestered, was we were not there searching for a gun. They found it when they were searching the premises. So I take—I find that it was discovered inadvertently and in plain view. The cases then indicate that when you find inadvertent evidence in plain view and they constitute the means or instrumentalities of a separate crime, they are evidence of another crime, they may be seized." "The police need not be caught completely by surprise for a discovery to be inadvertent, so long as they did not anticipate the discovery or know in advance the location of the evidence and intent to seize it." *State* v. *Pepe,* 176 Conn. 75, 79–80, 405 A.2d 51 (1978); see also *State* v. *Blackwell,* 20 Conn. App. 193, 200, 565 A.2d 549, cert. denied, 213 Conn. 810, 568 A.2d 794 (1989). We are bound by the findings of the trial court unless they are clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217,

221, 435 A.2d 24 (1990). We conclude they are not. We also conclude that the court's legal conclusion was supported by its finding and was legally correct. Id.

The judgment is affirmed.

In this opinion the other judges concurred.