STATE OF CONNECTICUT *v.* MARK VINCENT
(14736)

PETERS, C. J., BORDEN, BERDON, NORCOTT and KATZ, Js.

Argued January 12—decision released March 18, 1994*

*Michael C. Courtney,* assistant public defender, for the appellant (defendant).

*Leah Hawley,* assistant state's attorney, with whom, on the brief, were *Walter Flanagan,* state's attorney, and *David Holzbach,* assistant state's attorney, for the appellee (state).

---

* March 18, 1994, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

NORCOTT, J. The dispositive issue in this appeal is whether, under the circumstances of this case, a search warrant application stated probable cause to believe that a crime had been committed. This statement of the dispositive issue belies a complex factual predicate that complicates the resolution of this appeal.

After a jury trial, the defendant, Mark Vincent, was convicted of criminal possession of a revolver in violation of General Statutes (Rev. to 1989) § 53a-217.[1] The revolver was discovered on July 31, 1989, by the Wallingford police while executing a search warrant at the home of the defendant's mother in Bethel, where the defendant resided at that time.[2] The warrant was issued in response to the sudden and suspicious disappearance of the defendant's twelve year old daughter, Doreen, who has been missing since June, 1988. The warrant, dated July 31, 1989, authorized the police to seize medical records, personal papers, clothing, artifacts and photographs of Doreen. Although the gun was not identified in the warrant, the police seized it as contraband because the defendant previously had been convicted of a felony.[3]

---

[1] General Statutes (Rev. to 1989) § 53a-217 (a) provides: "A person is guilty of criminal possession of a pistol, revolver or electronic defense weapon when he possesses a pistol, revolver or electronic defense weapon and has been convicted of a capital felony, a class A felony, a class B felony, except a conviction under section 53a-86, 53a-122 or 53a-196a, a class C felony, except a conviction under section 53a-87, 53a-152, 53a-153 or 53a-196b, or a felony under sections 53a-60 to 53a-60c, inclusive, 53a-72a, 53a-72b, 53a-95, 53a-103, 53a-103a, 53a-114, 53a-136 or 53a-216. For the purposes of this section, 'convicted' means having a judgment of conviction entered by a court of competent jurisdiction."

[2] The revolver was found under articles of clothing inside of a brown paper bag that was tucked between the wooden studs of the adjacent garage.

[3] Whether the revolver found in the garage of the defendant's mother was contraband belonging to the defendant is an issue that was of concern at oral argument before this court. Our review of the record reveals that, in making a finding that the search was not pretextual, the trial court heard evidence during the argument on the motion to suppress that prior to the actual search: (1) the police had been aware of the defendant's felony rec-

Prior to trial, the defendant moved to suppress the revolver, which he claimed had been seized in violation of his rights under both the federal and state constitutions. The trial court denied the defendant's motion to suppress the evidence, concluding that the search had not been pretextual and that the revolver had been discovered "inadvertently and in plain view." Following a jury trial, the trial court rendered a judgment of conviction and sentenced the defendant to a period of four years incarceration.

The Appellate Court affirmed the judgment of conviction concluding, inter alia, that probable cause supported the search warrant application and that inadvertence was not required because the evidence seized was contraband. *State* v. *Vincent,* 30 Conn. App. 249, 256–60, 620 A.2d 152 (1993). We granted the defendant's petition for certification.[4] *State* v. *Vincent,* 225

ord; (2) the defendant's wife, Sharon, had told the police that the defendant "had a gun"; (3) the defendant himself had told Officer Thomas Hanley that he had a gun for "protection"; and (4) almost simultaneously with the discovery of the revolver, the defendant had entered the garage, acknowledged his ownership of the handgun and told the police that they could not take it.

Notwithstanding our conclusion that the Appellate Court unnecessarily determined that the gun constituted contraband for the purposes of its "plain view" analysis, we hold that the record clearly supports the conclusion that the police had abundant reason to believe that the gun indeed did belong to the defendant at the time of the execution of the search warrant.

[4] We granted certification limited to the following issues: "1. Under the circumstances of this case, did the Appellate Court properly conclude that the search warrant application stated probable cause to believe that a crime had been committed?" and "2. Was the Appellate Court correct in not deciding (1) whether the seizure of the revolver, the subject of the prosecution, was 'inadvertent' under the 'plain view' exception to the warrant requirement, and (2) whether the Connecticut constitution requires 'inadvertence' under the 'plain view' exception even if the United States constitution does not?" *State* v. *Vincent,* 225 Conn. 917, 623 A.2d 1026 (1993).

After examining the record on appeal and after considering the briefs and the arguments of the parties, we have determined that the second certified issue should not be considered because certification on that issue was improvidently granted. In fact, the trial court specifically found that the

Conn. 917, 623 A.2d 1026 (1993). We now affirm the judgment of the Appellate Court.

## I

The defendant claims that the search warrant affidavit contained an insufficient factual basis to support a conclusion of probable cause that a crime had been committed, in violation of the fourth amendment to the United States constitution, as made applicable to the states by the due process clause of the fourteenth amendment, and article first, § 7, of the Connecticut constitution.[5] He argues that because of this deficiency, the warrant was invalid and therefore did not give the police authority to be in a position to make the inadvertent discovery of the revolver. We disagree.

When determining whether an affidavit in support of a search warrant presented a substantial factual basis upon which a magistrate could have found probable cause, an appellate court is confined to the "four corners" of the warrant. *State* v. *Johnson,* 219 Conn. 557, 565, 594 A.2d 933 (1991). As the Appellate Court properly stated, "[w]e are confined to the facts that appear on the face of the affidavit and those facts that may properly be inferred therefrom, testing those facts with common sense and reality and with great deference to the fact that the issuing magistrate found probable cause." *State* v. *Vincent,* supra, 30 Conn. App. 252;

police discovered the revolver "inadvertently and in plain view." In its review, the Appellate Court acknowledged and adopted this finding, concluding that it was not "clearly erroneous." *State* v. *Vincent,* supra, 30 Conn. App. 262–63. Thus, the Appellate Court *did* decide the issue that the second certified question suggests it avoided. Furthermore, because the revolver was found inadvertently, the constitutional concerns that are addressed in part (2) of the second certified question need not be reached.

[5] The defendant has not provided an independent analysis of his claim under the state constitution. Therefore, we address only his fourth amendment claim. See, e.g., *State* v. *Robinson,* 227 Conn. 711, 721, 631 A.2d 288 (1993), and the cases cited therein.

see *Illinois* v. *Gates,* 462 U.S. 213, 235–36, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983); *United States* v. *Ventresca,* 380 U.S. 102, 109, 85 S. Ct. 741, 13 L. Ed. 2d 684 (1965).

The Appellate Court has adequately set forth the allegations that appeared in the warrant affidavit upon which the issuing magistrate's conclusion of probable cause could have been based. "On June 5, 1988, the defendant moved from Bridgeport to Whirlwind Hill Road in Wallingford with his wife Sharon, her children, and Doreen Vincent, the defendant's daughter from a previous marriage. Doreen's mother, Donna Jones, lived in Waterbury. On June 15, 1988, at approximately 11:30 p.m., Sharon Vincent returned home from church and was informed by the defendant that Doreen was missing. The defendant said that she had left through the front door. Sharon Vincent later stated that this was impossible because the door was locked with a deadbolt that required a key. Jones then called the defendant's Wallingford home and was told that Doreen was not at home. Jones attempted to contact Doreen several times on June 17, but the defendant had removed the phone from the wall. On Saturday evening, June 18, Jones arrived at the defendant's house to pick up Doreen and was then told that she had run away. Jones asked the defendant to alert the police, but he refused. Only at Jones' insistence did the defendant agree to report Doreen missing. He explained that he did not report her missing right away because he thought she had run away to Jones' house. Doreen had run away to Jones' house three times before, but on each occasion Jones had immediately called the defendant. The defendant also told police that he did not report Doreen missing because he thought Jones had come to get her when, in fact, he knew that at the time of the disappearance Jones did not know where he lived. The defendant did not tell his mother or a longtime

family friend that Doreen was missing even though he visited those people on June 19, 1988.

"In 1989, when Sharon Vincent moved from the Wallingford residence to Danbury, she gave Doreen's bedroom furniture and curtains to Jones. She told Jones that the defendant had thrown away Doreen's bedspread because Doreen had 'messed it up.' Sharon refused to turn over to police any of Doreen's school papers, clothing or personal effects.

"On July 10, 1989, search and seizure warrants were issued to seize Doreen's personal effects from Sharon's home in Danbury and her brother's home in Newtown. Property of Doreen's that the defendant said she had taken with her was recovered pursuant to these warrants.

"The defendant admitted to the police that he had a volatile temper and that on June 15, 1988, he had become angry with Doreen, had hit her and had pushed her into a window, breaking it.

"In November, 1988, the defendant moved into a house he shared with Roseann Pelloni. He left no forwarding address with the police, Sharon Vincent or Jones. His whereabouts were discovered after he was involved in a domestic dispute to which the Wallingford police were called.

"The defendant admitted to the police that he had taken photographs of Doreen in her underwear in the weeks prior to her disappearance. Pelloni stated that the defendant often took photographs, but that she searched his personal effects and was not able to find any. The defendant claimed that he no longer had any property of Doreen's when in fact, acting pursuant to a warrant, the police seized from the defendant's truck a jersey similar to Doreen's clothing. Jones consented to a search of her house and turned over to police

papers, furniture and magazines belonging to Doreen. The police were unable to recover any personal or medical records of Doreen and believed it valuable to their investigation to obtain any personal articles that might contain fingerprints, hair samples, handwriting samples and medical records that might identify her, and personal artifacts that might contain information concerning her disappearance. Sharon Vincent told police that, after Doreen's disappearance, she found several letters that Doreen had written to her friends but had not mailed. Those letters were not recovered. The defendant had been living at his mother's house in Bethel for several weeks prior to the issuance of the warrant." *State* v. *Vincent,* supra, 30 Conn. App. 252–54.

The police may lawfully seek and obtain a search warrant for an investigatory search for which it has been established that there is probable cause to believe that the objects sought constitute evidence of a crime and are located at the site to be searched. *Warden* v. *Hayden,* 387 U.S. 294, 307, 87 S. Ct. 1642, 18 L. Ed. 2d 782 (1967); *State* v. *Weinberg,* 215 Conn. 231, 237, 575 A.2d 1003, cert. denied, 498 U.S. 967, 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990); *State* v. *Morrill,* 205 Conn. 560, 564–65, 534 A.2d 1165 (1987); see also *State* v. *Gold,* 180 Conn. 619, 650, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980). "Probable cause to search exists if: (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction . . . *and* (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched." (Citations omitted; emphasis in original.) *State* v. *Weinberg,* supra, 238. Findings of probable cause do not lend themselves to any uniform formula because " 'probable cause is a fluid concept—turning

on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.' " *State* v. *Zarick,* 227 Conn. 207, 222, 630 A.2d 565 (1993); see also *In re Armand,* 454 A.2d 1216, 1218 (R.I. 1983).

In determining the existence of probable cause to search, the issuing magistrate assesses all of the information set forth in the warrant affidavit and should make a "practical, nontechnical decision whether . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State* v. *Johnson,* supra, 219 Conn. 563. We view the information in the affidavit in the light most favorable to upholding the magistrate's determination of probable cause. *State* v. *Duntz,* 223 Conn. 207, 216, 613 A.2d 224 (1992). " 'In a doubtful or marginal case . . . our constitutional preference for a judicial determination of probable cause leads us to afford deference to the [issuing judge's] determination.' *State* v. *Johnson,* supra, 565; see *In re Keijam T.,* 221 Conn. 109, 116, 602 A.2d 967 (1992)." *State* v. *Duntz,* supra, 216. Furthermore, it is axiomatic that "[a] significantly lower quanta of proof is required to establish probable cause than guilt." *United States* v. *Davis,* 458 F.2d 819, 821 (D.C. Cir. 1972); see *State* v. *Lamme,* 216 Conn. 172, 178, 579 A.2d 484 (1990).

In the present case, the affidavit provided a factual basis from which the magistrate could reasonably have inferred that Doreen's sudden disappearance was the result of criminal activity involving the defendant. Although the defendant makes much of the fact that neither the supporting affidavit nor the search warrant names a specific crime to which the objects sought are connected, this lack of specificity is of no great moment. See *People* v. *Casillo,* 99 Ill. App. 3d 825, 830, 425 N.E.2d 1379 (1981) ("[i]t does not matter whether the affidavit indicates that the offense is murder, volun-

tary manslaughter, or reckless homicide, since the facts in the affidavit, not the offense cited by the affiant, are those which the magistrate is required to assess in terms of their sufficiency") (Heiple, J., concurring). There is no question in this instance that the affidavit provided information that could support different theories of criminal activity, including homicide, sexual abuse, assault and battery, kidnapping or risk of injury to a child. As the defendant conceded at oral argument, this was not just a missing person investigation. The affidavit here contained substantial facts beyond the mere unexplained absence of the girl that supported the magistrate's finding of probable cause to believe that a crime had been committed.

The record reveals that many of the facts upon which the police based their belief that a crime had been committed came from the words and actions of the defendant himself. The affidavit stated that: (1) the defendant had never made an affirmative attempt to locate his daughter immediately after her disappearance; (2) the defendant had given a number of inconsistent and evasive accounts of Doreen's disappearance from which it could reasonably have been inferred that he had attempted to conceal the fact of her disappearance; (3) a number of Doreen's personal effects, which the defendant had told police she had taken with her, had subsequently been recovered by the police, including a jersey that had been found in the defendant's truck; (4) the defendant had admitted to the police that he had a volatile temper and that on the day prior to Doreen's disappearance he had hit her and pushed her into a window with enough force to break it; and (5) after searching the homes of both Doreen's mother and stepmother, the police had been unable to recover some of Doreen's personal effects and medical records, including a number of letters that she had written but had not mailed just prior to her disappearance. We conclude, on the

basis of the foregoing, that there was a substantial factual basis stated in the affidavit upon which the magistrate could have found probable cause to believe that Doreen had disappeared as the result of criminal activity and that evidence of that activity, namely her personal effects and records, could be found at the defendant's residence.

## II

The defendant also claims that there was no probable cause to search his mother's house because the facts alleged in the affidavit were too removed in time from the actual search. He contends that the thirteen month period between the dates of Doreen's disappearance and the search rendered stale the allegations regarding the circumstances of the disappearance and the whereabouts of Doreen's personal effects. We disagree.

It is undisputed that "[t]he determination of probable cause to conduct a search depends in part on the finding of facts so closely related to the time of the issuance of the warrant as to justify a belief in the continued existence of probable cause at that time. *State* v. *Rose,* 168 Conn. 623, 631, 362 A.2d 813 (1975). Although it is reasonable to infer that probable cause dwindles as time passes, no single rule can be applied to determine when information has become too old to be reliable. 'The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock: the character of the crime (chance encounter in the night or regenerating conspiracy?), of the criminal (nomadic or entrenched?), of the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), of the place to be searched (mere criminal forum of convenience or secure operational base?), etc. The observation of a half-smoked marijuana cigarette in an ashtray at a cocktail party may well be stale the day

after the cleaning [service] has been in; the observation of the burial of a corpse in a cellar may well not be stale three decades later. The hare and the tortoise do not disappear at the same rate of speed.' *Andresen* v. *State,* 24 Md. App. 128, 172, 331 A.2d 78 (1975), aff'd, 427 U.S. 463, 96 S. Ct. 2737, 49 L. Ed. 2d 627 (1976); see also *Sgro* v. *United States,* 287 U.S. 206, 211, 53 S. Ct. 138, 77 L. Ed. 260 (1932); 2 W. LaFave, Search and Seizure (2d Ed. 1987) § 3.7 (a), pp. 74–88." *State* v. *Johnson,* supra, 219 Conn. 566–67.

The police here sought materials, records and artifacts, which were reasonably and logically deemed to be in the possession of the defendant, the missing girl's father. It does not stretch the imagination to believe that parents keep their children's photographs, birth certificates and childhood artifacts with them as they move from place to place over extended periods of time. The police in this case were pursuing leads and investigating theories in order to resolve Doreen's disappearance. One of those theories was that Doreen had fallen victim to foul play. Under these circumstances, when the police were seeking clearly relevant information to help them resolve the child's sudden and suspicious disappearance, we refuse to adopt an arbitrary cutoff date, expressed either in days, weeks or months, beyond which probable cause ceases to exist. See *United States* v. *Beltempo,* 675 F.2d 472, 478 (2d Cir.), cert. denied, 457 U.S. 1135, 102 S. Ct. 2963, 73 L. Ed. 2d 1353 (1982). The defendant's claim that the passage of time between Doreen's disappearance and the challenged search rendered the search warrant invalid is without merit.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.