## STATE OF CONNECTICUT *v.* CHARRON SWEENEY
## (10534)

DUPONT, C. J., O'CONNELL and LANDAU, Js.

Argued October 26, 1992—decision released March 9, 1993

*Brian M. O'Connell,* for the appellant (defendant).

*Marjorie Allen Dauster,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Paul Murray,* senior assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant was convicted, after a trial by jury, of possession of less than four ounces of marihuana in violation of General Statutes § 21a-279 (c)[1] and conspiracy to distribute marihuana in violation of General Statutes §§ 53a-48 (a)[2] and 21a-277 (b).[3] On appeal, the defendant claims that the trial court improperly (1) denied her motion to suppress all materials seized pursuant to the financial records warrant, alleging that the warrant failed to state with particularity the items to be seized, (2) admitted the testimony of the state's expert witness, and (3) denied the defendant's motion for judgment of acquittal. We affirm the judgment of the trial court.

---

[1] General Statutes § 21a-279 (c) provides in pertinent part: "Any person who possesses . . . or has under his control less than four ounces of a cannabis-type substance, except as authorized in this chapter, for a first offense, may be fined not more than one thousand dollars or be imprisoned not more than one year, or be both fined and imprisoned; and for a subsequent offense, may be fined not more than three thousand dollars or be imprisoned not more than five years, or be both fined and imprisoned."

[2] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[3] General Statutes § 21a-277 (b) provides in pertinent part: "Any person who . . . distributes, sells . . . [or] dispenses . . . any controlled substance . . . except as authorized in this chapter, may, for the first offense, be fined not more than twenty-five thousand dollars or be imprisoned not more than seven years or be both fined and imprisoned; and, for each subsequent offense, may be fined not more than one hundred thousand dollars or be imprisoned not more than fifteen years, or be both fined and imprisoned."

The jury reasonably could have found the following facts. On November 15, 1990, at about 7:55 p.m., members of the North Central Municipal Narcotics Task Force[4] executed a search warrant at 68 Arrowhead Road, Windsor, for the seizure of marihuana and drug trafficking equipment. This warrant is not the subject of this appeal. The defendant and her four children were at home at the time of the search. During the search, the officers encountered a locked door that led into the garage. They opened the door with a credit card. The inside of the garage windows were painted black, and there was a strong odor of marihuana. Inside the garage, the officers found three large green garbage bags containing a total of approximately seventy pounds of marihuana. They also found other green bags wrapped in duct tape with plant residue on the tape and in the bags, a 100 pound scale, a small electronic scale, and boxes of plastic bags in varying sizes.

From a kitchen cabinet, the officers seized a plastic bag containing approximately 1.1 ounces of marihuana. In the den, they found a business card with prices of drugs printed on the back. The officers found a triple beam Ohaus scale, three guns and various ammunition, and a total of $12,350 in two separate dresser drawers in a downstairs bedroom. From the top of a hutch in the dining room, they seized a loaded nine millimeter semiautomatic pistol. The officers found cardboard boxes filled with plastic bags of different sizes in various locations throughout the house. In an upstairs bedroom, $7660 was found in a dresser drawer. They searched the defendant's purse and seized a passbook for a joint savings account with her father and $940. At about 10 p.m., one of the officers left the defendant's house to secure a second warrant for the seizure of financial records. This warrant is the subject of this

---

[4] This task force is comprised of members of municipal enforcement agencies of Avon, Simsbury, Bloomfield and Windsor.

appeal. The second search resulted in the seizure of income tax returns, payroll stubs, a bankbook from a Jamaican bank, and receipts for the purchase of a number of personal items. The payroll records indicated that the defendant was employed at First Brands Corporation, a manufacturer of plastic bags. The income tax records established the income that she earned in this capacity.

I

The defendant's first claim is that the trial court improperly denied her motion to suppress the evidence seized as a result of the financial records warrant. That warrant provided as follows: "All financial records, including, but not limited to cancelled checks, bank statements, bank books, income tax reports, receipts for purchases, answering machines and tapes, telephone pager records, and all records, memos, passports, telephone records, income records, and other records used as means and instrumentalities of the crimes of possession of more than one kilogram of marijuana with intent to sell, operating a drug factory, and possession of more than four ounces of marijuana." The defendant alleges that the warrant lacked sufficient particularity to satisfy the requirements of the fourth amendment to the United States constitution and article first, § 7, of our state constitution.[5] Specifically, the defendant alleges that the phrases *but not limited to* and *and other records used as means and instrumentalities* are so generic and unconstitutionally vague as to violate the fourth amendment. We disagree.

[5] The defendant failed to brief the state constitutional issue separately. This court may, but need not, independently undertake to engage in such an analysis where the issue has not been briefed. Here, we choose not to consider this issue. *State* v. *Jacobs,* 30 Conn. App. 340, 342 n.1, 620 A.2d 198 (1993); *State* v. *Johnson,* 28 Conn. App. 708, 713, 613 A.2d 1344, cert. granted, 224 Conn. 911, 617 A.2d 168 (1992).

"The fourth amendment to the United States constitution provides that a warrant must 'particularly [describe] . . . the persons or things to be seized.' A particular description of the item to be seized is necessary to avoid a general exploratory rummaging in the search. *Coolidge* v. *New Hampshire,* 403 U.S. 443, 467, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971). In determining whether a warrant is sufficiently particular in describing an item to be seized, a number of factors are relevant, namely, the purpose for which the warrant was issued, the relevance of the item to the crime charged, and the total circumstances surrounding the case. *Marron* v. *United States,* 275 U.S. 192, 196, 48 S. Ct. 74, 72 L. Ed. 231 (1927). The warrant must be sufficiently definite so that the officer executing it can identify the property sought with reasonable certainty. Id." *State* v. *Gagnon,* 18 Conn. App. 694, 709–10, 561 A.2d 129, cert. denied, 213 Conn. 805, 567 A.2d 835 (1989). While the warrant must describe the objects of the search with "reasonable specificity, [it] need not be elaborately detailed. . . . Nor must the warrant enable authorities to minutely identify every item for which they are searching. . . . Thus, a description is valid if it is as specific as the circumstances and the nature of the activity under investigation permit. (Citations omitted.)" (Internal quotation marks omitted.) *State* v. *Ruscoe,* 212 Conn. 223, 234, 563 A.2d 267 (1989), cert. denied, 493 U.S. 1084, 110 S. Ct. 1144, 107 L. Ed. 2d 1049 (1990).

A high degree of scrutiny is required when reviewing the particularity requirement of search warrants for documents. The Supreme Court recognized this in *Andresen* v. *Maryland,* 427 U.S. 463, 482 n.11, 96 S. Ct. 2737, 49 L. Ed. 2d 627 (1976), when it stated that "[i]n searches for papers, it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among

those papers authorized to be seized. Similar dangers, of course, are present in executing a warrant for the 'seizure' of telephone conversations. In both kinds of searches, responsible officials, including judicial officials, must take care to assure that they are conducted in a manner that minimizes unwarranted intrusions upon privacy."

The warrant and accompanying affidavit in this case were sufficiently particular to guard against this danger. The affidavit specifically described the results of the initial search and described many of the items found, relating to the possession and sale of drugs, in the course of that search. It also described how, in the affiants' knowledge and experience, certain documents are evidence of an attempt to secrete and launder proceeds from these activities, and the fact that the affiants had specifically observed "numerous records which are pertinent to identifying assets and other property gained from this illegal activity."

Contrary to the defendant's assertion, the language *including but not limited to* is not overbroad when viewed in light of the totality of the case. First, the language of the warrant impliedly limited the seizure of records similar to those specifically outlined in the warrant and the affidavit. Second, the seizure of records was specifically limited, by the language *and other records used as means and instrumentalities of the crimes*, to records relating to the crimes listed in the warrant and affidavit. The warrant did not allow an unrestrained rummaging for evidence of any crime. It effectively instructed the officers to seize only those items indicating activity associated with the illegal possession and distribution of marihuana. See *United States* v. *Washington,* 782 F.2d 807, 818 (9th Cir. 1986); *United States* v. *Vanichromanee,* 742 F.2d 340, 347 (7th

Cir. 1984). Therefore, the warrant and accompanying affidavit satisfy the requirements of the fourth amendment.

## II

The defendant next claims that the trial court abused its discretion by allowing the testimony of the state's expert witness concerning the relationship between the evidence seized in this case and drug trafficking. The defendant argues that the probative value of the testimony of the police officer was outweighed by its prejudicial effect. We disagree.

"A trial court has broad discretion in its rulings on the relevance of evidence and in its determination of whether the probative value of evidence outweighs its prejudicial effect. Reversal is required only when there is an abuse of discretion or when an injustice has been done." *State* v. *Baskins,* 12 Conn. App. 313, 318, 530 A.2d 663, cert. denied, 205 Conn. 811, 532 A.2d 586 (1987). The test for the admissibility of expert testimony is "whether the witnesses offered as experts have any peculiar knowledge or experience, not common to the world, which renders their opinions founded on such knowledge or experience any aid to the court or the jury in determining the question at issue. . . . Generally, expert testimony may be admitted if the witness has a special skill or knowledge, beyond the ken of the average juror, that, as properly applied, would be helpful to the determination of an ultimate issue." (Citations omitted; internal quotation marks omitted.) *State* v. *Palmer,* 196 Conn. 157, 166, 491 A.2d 1075 (1985). The trial court has broad discretion in applying these concepts and in ruling on the admissibility of expert opinions. *State* v. *Rodgers,* 207 Conn. 646, 651, 542 A.2d 1136 (1988); *State* v. *Kemp,* 199 Conn. 473, 476, 507 A.2d 1387 (1986). "The exercise of such discretion is not to be disturbed unless it has been abused or the

error is clear and involves a misconception of the law." *State* v. *Douglas,* 203 Conn. 445, 452, 525 A.2d 101 (1987).

In *State* v. *Vilalastra,* 207 Conn. 35, 44–45, 540 A.2d 42 (1988), our Supreme Court noted: "Under Fed. R. Evid. 702, expert testimony is admissible if it will assist the trier of fact to understand the evidence or to determine a fact in issue. The subject of the expert testimony here, i.e., the clandestine manner in which drugs are bought and sold, is unlikely to be within the knowledge of the average layman. . . . We believe that a trial court should have broad discretion in the matter of the admission of expert testimony concerning the sale of illicit drugs. . . ." (Citations omitted; internal quotation marks omitted.) The trial court did not abuse its broad discretion in allowing the testimony of the state's expert.

### III

Finally, the defendant challenges the sufficiency of the evidence that led to her conviction of conspiracy to distribute marihuana in violation of General Statutes §§ 53a-48 (a) and 21a-277 (b). She argues that the evidence presented by the state failed to prove beyond a reasonable doubt that she and a coconspirator had the intent to agree to commit a crime. We are not persuaded.

The following additional facts are required to resolve this claim. The defendant testified that she met Uriah Anthony Walker in August, 1989.[6] The defendant and Walker moved into the house on Arrowhead Drive in October, 1990. The defendant testified that the drugs belonged to Walker and that she knew that Walker was

---

[6] Walker was named in the information as a coconspirator. It is believed that he fled the Hartford area sometime around the middle of November, 1990. The FBI was searching for him at the time of trial.

distributing drugs from her house. She also testified that she knew that the money that Walker gave her, often ranging from $1000 to $3000, was proceeds from the distribution of drugs. She acknowledged that she purchased the plastic bags found at the residence from her employer at a discount.

When a claim on appeal challenges the sufficiency of the evidence, we undertake a two part task. "We first review the evidence presented at trial, construing it in the light most favorable to sustaining the [jury's verdict] . . . . We then decide whether, on the facts thus established and the inferences reasonably drawn therefrom, the . . . jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt." (Citation omitted.) *State* v. *Johnson,* 26 Conn. App. 433, 435, 602 A.2d 36, cert. denied, 221 Conn. 916, 603 A.2d 747 (1992).

"To establish the crime of conspiracy under § 53a-48 of the General Statutes, it must be shown that an agreement was made between two or more persons to engage in conduct constituting a crime and that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the conspirators. The state must also show intent on the part of the accused that conduct constituting a crime be performed. . . . Further, the state also must show that the conspirators intended to agree and that they intended to commit the elements of the underlying offense. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Channer,* 28 Conn. App. 161, 168, 612 A.2d 95, cert. denied, 223 Conn. 921, 614 A.2d 826 (1992). "To prove the offense of conspiracy to [distribute] narcotics, the state must prove two distinct elements of intent: that the conspirators intended to agree; and that they intended to [distribute] narcotics to another per-

son." *State* v. *Hernandez,* 28 Conn. App. 126, 135, 612 A.2d 88, cert. denied, 223 Conn. 920, 614 A.2d 828 (1992).

It is well established that circumstantial evidence is sufficient to prove that there was an agreement because conspiracies, by their very nature, are formed in secret and only rarely can be proved by other than circumstantial evidence. *State* v. *Holmes,* 160 Conn. 140, 150, 274 A.2d 153 (1970); see *State* v. *Ghere,* 201 Conn. 289, 299, 513 A.2d 1226 (1986) (existence of a formal agreement between the conspirators need not be proved because only in rare instances can a conspiracy be established by proof of an express agreement).

Construing the evidence in light of sustaining the jury's verdict, there was sufficient evidence to support a finding that the defendant conspired with Walker to distribute marihuana. The marihuana operation pervaded the entire residence. The plastic bags used to distribute the drugs were found throughout the house. The defendant acknowledged that she knew that the distribution operation was in her house. She admitted purchasing large quantities of plastic bags from her employer—bags that were used as part of the operation. She also admitted that she knew that the money that Walker gave her was proceeds from the distribution operation. All of this evidence supports a finding that the defendant and Walker agreed to operate a drug distribution enterprise, and that she intended to distribute the drugs to other people.

The judgment is affirmed.

In this opinion the other judges concurred.