[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING RE MOTION TO SUPPRESS
By motion dated April 28, 1999 and memorandum in support thereof dated May 5, 1999. the defendant moves to suppress as evidence Connecticut state police exhibits 11 and 37 which were seized pursuant to a search warrant signed and executed on June 13, 1998. The defendant claims that the seizure violates thefourth, fifth, sixth and fourteenth Amendments of the United States Constitution and article one, §§ 7, 8 and 9 of the Connecticut constitution. Practice Book § 41-13 and General Statutes § 54-33f.
The warrant sought permission to search the residence of the defendant at 102 Danbury Quarter Road in Winsted, Connecticut, for certain property constituting evidence of the offense of murder described as follows:
 Blood, semen, saliva, physiological fluids and secretions, hair, fibers, fingerprints, shoeprints, weapons and firearms including pistols, rifles, revolvers, shotguns, hatchets, axes, knives, cutting instruments and cutting tools, blunt force instruments, projectiles, ammunition, bullet casings and fragments, dirt, dust and soil, paint samples, glass and plastic samples, marks of tools used to gain access to locked premises or containers, and items containing traces of any of the above mentioned articles. And that the items seized may be subsequently submitted to the Forensic Laboratory OFFICE CT Page 9384 OF THE CLERK for examination, along with any evidence seized pursuant to this warrant. Syringes, drugs, suicide notes, handwriting samples.
The defendant argues first that the facts set forth in the affidavit accompanying the warrant application are insufficient to establish probable cause that the particular items sought to be seized were connected with criminal activity. She next argues that the warrant fails to describe the items to be seized with the requisite particularity. She then argues that since the items contained in exhibits 11 and 37 were not described in the warrant their seizure was beyond the scope of the warrant and was not justified under the plain view doctrine. Finally, she claims that the documents contained within exhibit 37 are privileged and confidential communications with her attorney so that they should be suppressed.
On June 13, 1998, after obtaining the warrant, law enforcement officers searched the defendant's home and among other items they seized exhibit 11, four banking receipts dated June 12, 1998 and June 13, 1998, and a paper bag containing five manila envelopes containing various documents.[1]
In deciding a challenge to the validity of a search warrant, the trial court is guided by well established standards. This court does not conduct a de novo review but rather determines "whether the affidavit at issue presented a substantial factual basis for the magistrate's conclusion that probable cause existed." State v. Duntz, 223 Conn. 207, 215 (1992).
 When determining whether an affidavit in support of a search warrant presented a substantial factual basis upon which a magistrate could have found probable cause, an appellate court is confined to the "four corners" of the warrant. State v. Johnson, 219 Conn. 557, 565, 594 A.2d 933 (1991). As the Appellate Court properly stated, "[w]e are confined to the facts that appear on the face of the affidavit and those facts that may properly be inferred therefrom, testing those facts with common sense and reality and with great deference to the fact that the issuing magistrate found probable cause." State v. Vincent, supra, 30 Conn. App. 252; see Illinois v. Gates, 462 U.S. 213, 235-36, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); United States v. Ventresca, 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).
CT Page 9385State v. Vincent, 229 Conn. 164, 168-69 (1994).
"Probable cause to search exists if: 1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity; and 2) there is probable cause to believe that the items named will be found in the place to be searched." State v. Duntz, supra, 223 Conn. 215-216. Generally, probable cause is found when an impartial and reasonable mind would not merely suspect or conjecture but would be reasonably persuaded by the facts to believe that criminal activity has occurred.
In this warrant, the affidavit set forth the following facts. On June 13, 1998, the Winsted police department received a telephone call from Karen Howard of Niagara Falls New York, requesting that the police go to the defendant's home to check on her well being. Howard told the police that the defendant had telephoned her, was threatening to commit suicide, and had mailed out letters to various people letting them know of her plans. After Howard's call, three police officers were dispatched to the defendant's home. They found the doors locked; there was no answer to repeated knocks at the door. They entered the home through the bedroom window. Upon entering the house, the officers saw the defendant and Christina Thompson, age 1, lying on the bed, with Christina lying underneath her mother. Neither was moving. Two dogs were lying on the bed and were not moving. Both persons were checked for signs of life; the defendant had a pulse and was breathing. Christina was pulled out from underneath her mother, and, for her, no signs of life were found. An officer began CPR on Christina: the defendant was given oxygen. Both were transported to the hospital by ambulance. The officers searched the home for additional victims; none was found. The dogs appeared to be dead. Three syringes were seen on the bedroom dresser. No drugs were seen in plain view. A suicide note was on the kitchen counter. One syringe was seized and taken to the hospital for chemical analysis and treatment of the victims. Christina was pronounced dead at the hospital; two puncture wounds were noted in the area of the heart. The defendant was alive. Howard advised the police that the defendant was a licensed veterinary technician and that when she had called Howard she told her that she had put her dogs to sleep. Howard stated that the defendant would probably have used a drug called Fatal Plus.
As to the defendant's first argument, the court is not CT Page 9386 persuaded. Under the established law as noted earlier, the warrant set forth sufficient facts to establish probable cause that the handwriting samples were connected with criminal activity. In light of the content of telephone call to Howard, the discovery of the bodies on the bed, the discovery of the suicide note and the syringes in plain view, common sense and reality support the issuing magistrate's finding of probable cause that the handwriting samples were related to the criminal activity of murder. State v. Martinez, 51 Conn. App. 59, 66, cert. denied, 247 Conn. 952 (1998) ("This court's scope of review, in evaluating the existence of probable cause, is limited to the facts that appear within the four corners of the affidavit orfacts that may be properly inferred from those facts.")
As to the defendant's argument that the warrant lacked the requisite specificity in describing handwriting samples, the court is also not persuaded.
 "The fourth amendment to the United States constitution provides that a warrant must particularly [describe] . . . the persons or things to be seized.' A particular description of the item to be seized is necessary to avoid a general exploratory rummaging in the search. Coolidge v. New Hampshire, 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564
(1971). In determining whether a warrant is sufficiently particular in describing an item to be seized, a number of factors are relevant, namely, the purpose for which the warrant was issued, the relevance of the item to the crime charged, and the total circumstances surrounding the case. Marron v. United States, 275 U.S. 192, 196, 48 S.Ct. 74, 72 L.Ed. 231 (1927). The warrant must be sufficiently definite so that the officer executing it can identify the property sought with reasonable certainty. Id." State v. Gagnon, 18 Conn. App. 694, 709-10, 561 A.2d 129, cert. denied, 213 Conn. 805, 567 A.2d 835 (1989). While the warrant must describe the objects of the search with "reasonable specificity, [it] need not be elaborately detailed. . . . Nor must the warrant enable authorities to minutely identify every item for which they are searching. . . . Thus, a description is valid if it is as specific as the circumstances and the nature of the activity under investigation permit. (Citations omitted.)" (Internal quotation marks omitted.) State v. Ruscoe, 212 Conn. 223, 234, 563 A.2d 267 (1989), cert. denied. 493 U.S. 1084, 110 S.Ct. 1144, 107 L.Ed.2d 1049 (1990). CT Page 9387
State v. Sweeney, 30 Conn App. 550, 554, cert. denied,225 Conn. 927 (1993). Under the circumstances here, the description of "handwriting samples" is sufficiently specific. The facts presented in the affidavit are such that the description of handwriting samples is valid; there was information that the defendant had written letters to inform persons of her plan, and one suicide note had been seized at the discovery of the bodies on the bed. Further, the description is specific enough for the officers, upon cursory examination, to determine which papers they were authorized to seize. State v. Sweeney, supra,30 Conn. App. 555.
The defendant argues that the four banking receipts contained in Exhibit 11 were not described in the warrant so that their seizure was illegal. It is not disputed by the state that these items were not described in the warrant. The State contends that the seizure is permitted under the plain view doctrine, an exception to the warrant requirement. See Coolidge v. NewHampshire, 403 U.S. 443, 464-73, 91 S.Ct. 2022, 29 L.Ed.2d 564
(1971). "When the police have prior justification for an intrusion and inadvertently come across items of immediately apparent evidentiary value in plain view they may seize those items." State v. Reddick, 207 Conn. 323, 335 (1988). In searching for those items described in the warrant, the officers here came across the banking receipts. Accordingly, it is only the issue of the "immediately apparent evidentiary value" of these items that requires discussion. In State v. Eady, 249 Conn. 431, 439 (1999), quoting in part from Reddick, the majority noted that the "`immediately apparent' requirement of the plain view exception is satisfied if, at the time of discovery of the contraband or evidence, there is `probable cause to associate the property in plain view with criminal activity without further investigation.'"
The state proposes that because the ATM bank receipts are records of financial transactions made within an hour of the homicide and on the prior day, they are probative of the motive and state of mind of the defendant and therefore are "mere evidence" as set forth in Warden v. Hayden, 387 U.S. 294, 307,87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). In support of this argument, the state cites State v. Gold, 180 Conn. 619, 650-51, cert. denied, 449 U.S. 920 (1990). This court does not read State v.Gold to extend to this case. In Gold, the warrant described a button similar to the buttons in the buttoneer kit seized. The CT Page 9388 court found the seizure valid because, based on the facts in the warrant's affidavit, there was cause to believe that the evidence would aid in a particular apprehension or conviction. Id., 651. Here there were no facts alleged in the warrant for probable cause to believe that the banking receipts would aid in the apprehension or conviction of a crime.
The state also argues that the defendant had no expectation of privacy in the bank receipts because they were in the wastebasket. Citing State v. DeFusco, 224 Conn. 627 (1993), the state claims that the defendant had no reasonable expectation of privacy as to the items placed in her wastebasket so that no state or federal constitutional protections are implicated. InDeFusco, the court found that the defendant did not have a reasonable expectation of privacy in the garbage left on the curb for collection, and thus the seizure from the garbage did not violate article first, § 7, of the Connecticut constitution. For the defendant to demonstrate that she had a reasonable expectation of privacy in the items in the wastebasket: (1) she must have manifested a subjective expectation of privacy with respect to the items; and (2) that expectation must be one that society would consider reasonable. See State v. Bernier,246 Conn. 63, 72 (1998). Further, the determination of "what Connecticut citizens would consider reasonable in the present day is made on a case-by-case basis . . . [and] involves a fact-specific inquiry into all the relevant circumstances." Id. The items here were seized during the execution of a search warrant; they were found in the wastebasket in the kitchen. There is a significant difference between waste in wastebaskets in a home and that found in the garbage on the curb for collection. Under all the relevant circumstances, this court determines that the items in the defendant's kitchen wastebasket are items to which she had a reasonable expectation of privacy. Accordingly, their seizure violated the state and federal constitutions as set forth previously.
The court has reviewed the documents contained in Exhibit 37. As to those documents that contain handwriting samples, for the reasons stated previously, the motion to suppress is denied. As to those documents that contain no handwriting, the motion is granted. As stated earlier, the items not described in the warrant cannot be seized under the exception of plain view unless the items are of immediately apparent evidential value. The immediately apparent requirement is met when the police, on discovery "have probable cause to associate the property in plain CT Page 9389 view with criminal activity without further investigation." Statev. Reddick, supra, 207 Conn. 335 (1988); see State v. Eady, supra, 249 Conn. 439. Here there is nothing in the warrant to provide probable cause to believe that the documents not containing handwriting which are personal papers, court documents, TTY tapes, employment applications, a tax return, informational brochures are connected to criminal activity. Further, as noted State v. Sweeney, supra, 30 Conn. App. 554-556, quoting Andresen v. Maryland, 427 U.S. 463, 482 n. 11,96 S.Ct. 2737, 49 L.Ed.2d 627 (1976):
 In searches for papers, it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized. Similar dangers, of course, are present in executing a warrant for the `seizure' of telephone conversations. In both kinds of searches, responsible officials, including judicial officials, must take care to assure that they are conducted in a manner that minimizes unwarranted intrusions upon privacy.
(Emphasis added). The personal papers of the defendant were not described in the warrant to be seized. The plain view exception does not apply to them. Their seizure violates article one, § 7
of the Connecticut constitution and the fourth amendment of the U.S. constitution. The motion to suppress is granted as to those items in Exhibit 37 not containing handwriting.
The defendant's final claim is that certain of her personal papers from Exhibit 37 are protected by the attorney client privilege from seizure. The authority she cites is Klitzman,Klitzman and Gallagher v. Krut, 744 F.2d 955 (3rd Cir. 1984), an injunction action seeking the return of documents seized from a law office. The facts and holding of that case are not applicable here. The defendant has cited no Connecticut case to support her position that documents should be suppressed because of the attorney client privilege. In Ullman v. State, 230 Conn. 698, 711
(1994), the court stated,
 The attorney-client privilege protects communications between client and attorney when made in confidence for the purpose of seeking or giving legal advice. State v. Cascone, 195 Conn. 183, 186 (1985). Statements made in the presence of a third party, on the other hand, "are usually not privileged because there is then no reasonable expectation of CT Page 9390 confidentiality." Id.
The defendant has not presented any evidence that the documents contain communications made in confidence between her and her attorney. That is her burden. Miller v. Anderson,30 Conn. Sup. 501, 504 (1972). For these reasons, the court does not suppress any items contained in Exhibit 37 on the basis of attorney client privilege.
For the foregoing reasons, the motion is granted as to Exhibit 11 and as to those items in Exhibit 37 not containing handwriting samples.
The defendant has also moved for a sealing of the copies of exhibit 37 presented with this motion. The court reviewed these copies in camera and will issue a ruling on the motion to seal on July 30, 1999 at 10 a.m. in open court.
Dipentima, J.